## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)  MUSKET CORPORATION, an Oklahoma corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-11-880-M |
| (1)  STROBEL CONSTRUCTION UNLIMITED, INC., a Nebraska corporation, | ) ) ) ) | |
| (2)  STROBEL MANUFACTURING, INC., a Nebraska corporation, | ) ) ) | |
| (3)  STROBEL STAROSTKA CONSTRUCTION, a Nebraska entity, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff, Musket Corporation ("Musket"), for its causes of action against Defendants, Strobel Construction Unlimited, Inc., Strobel Manufacturing, Inc., and Strobel Starotska Construction, (collectively, "Defendants"), alleges and states as follows:

## THE PARTIES

1.      Musket is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.  Musket is engaged in the business of transporting, marketing and selling petroleum products.

2.     Defendant Strobel Construction Unlimited, Inc. ("Strobel Construction") is a Nebraska corporation with its principal place of business in Clarks, Nebraska. Strobel Construction is a general contractor in the heavy industrial area.

3.     Defendant Strobel Manufacturing, Inc. is a Nebraska corporation with its principal place of business in Clarks, Nebraska. Strobel Manufacturing is engaged in the business of manufacturing, distributing and selling farming and industrial equipment.

4.     Defendant Strobel Starotska Construction is a Nebraska business entity with its principal place of business in Clarks, Nebraska. Strobel Starotska is engaged in the business of commercial and industrial construction.

## JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1332 and 1338(a) and (b).

6.     Venue for this action is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## BACKGROUND

7.     Musket has developed a proprietary transferring system and method whereby portable trailers ("Transload Trailers") are used to transfer petroleum products between rail cars and tanker trucks enabling further transportation of such products to market.   The transferring system and method including the Transload Trailers is collectively referred herein as the "Transload Fuel Transfer System."

8.     Musket owns the following patents for its Transload Fuel Transfer System: U.S. Patent No. 6,945,288 (issued September 20, 2005); U.S. Patent No. 7,156,134

2

(issued January 2, 2007); and U.S. Patent No. 7,308,918 (issued December 18, 2007). Musket also owns the following patent application directed to its Transload Fuel Transfer System: U.S. application Serial No. 12/214,886, filed June 23, 2008 (Publication No. US 2009/0314384 A1, published December 24, 2009).

9.     On March 9, 2004, Musket and Strobel Construction entered into a Manufacturing and Intellectual Property Rights Agreement (the "Agreement") concerning the ongoing design, development and fabrication of Transload Trailers by Strobel Construction for Musket. The Agreement remains effective to date and is binding upon the parties and their successors and permitted assigns, which now includes, but is not limited to, each of the Defendants.

10.    The Agreement provides for Strobel Construction to be the exclusive manufacturer of Musket's requirements for Transload Trailers. In accordance with the Agreement, Musket has purchased all of its Transload Trailers from Defendants during the term.

11.    The Agreement further provides that Strobel Construction "shall manufacture [Transload Trailers] for the exclusive use and benefit of Musket." (Paragraph 1, Agreement, Exhibit 1). Since approximately 2004, Defendants have manufactured Transload Trailers for Musket, including Transload Trailers designed for transferring diesel fuel, biodiesel, gasoline, ethanol, crude oil, condensate and/or jet fuel. However, Defendants have violated the Agreement by manufacturing and selling Transload Trailers to third parties.

12.    The Agreement also provides that all inventions and other intellectual property relating to the Transload Fuel Transfer System shall be owned by Musket. Specifically, the Agreement provides as follows:

6.1    Inventions and other intellectual property may have resulted from or may result from Strobel's relationship with Musket. Strobel shall disclose promptly in writing to Musket all inventions, or designs relating to the System and Trailers that have been or are conceived or made by Strobel in the course of performance of its obligations to Musket or based on information to which Strobel has had or has access as a result of visitations to Musket facilities or of entities related to Musket or communications with Musket employees or employees of companies related to Musket. Such inventions, discoveries, improvements, or designs, whether developed in connection with past performance or in connection with future performance by Strobel, shall be the exclusive property of Musket, even if patent applications are not filed therefore. Without any claim or right by Strobel to additional compensation, Strobel hereby assigns to Musket all rights, title, and interest in and to any and all such inventions, discoveries, improvements, and designs.

6.2    Upon request, Strobel shall execute and deliver all documents reasonably necessary or desirable for the preparation, prosecution, or maintenance of United States and international patents for inventions developed during the course of the relationship between Strobel and Musket or performance of this Agreement and made or conceived by Strobel, and for the transfer to Musket of title thereto. Strobel shall assist Musket's attorneys in the preparation and prosecution of any United States or international patent applications based on inventions arising out of the course of the relationship between Strobel and Musket or the performance of this Agreement. Strobel's obligations pursuant to this paragraph shall continue after termination of this Agreement.

6.3    Products, data sheets, reports, memoranda, notes records, books, drawings, sketches, disks, plans, computer programs material related to computer programs, plots and other tangible items in Strobel's possession or control or to which Strobel is given access as a direct result of the relationship with Musket shall at all times be the exclusive property of Musket. At no time shall Strobel make such items available to third parties, without express authorization from Musket. Strobel shall, upon termination of this Agreement, deliver promptly to Musket any such items (including copies thereof) that are in Strobel's possession or control.

6.4    All writings, reports, drawings, models, computer programs, photographs, engineering drawings, sketches, sound recordings, audio

visual recordings, electronic works, and other creative works (collectively "Works") prepared by Strobel under this Agreement shall be deemed to have been prepared for Musket and shall be considered "works made for hire," as that phrase is used in the U.S. copyright laws.  All rights, including the copyrights, in and to all Works shall be owned by Musket. Without any claim or right by Strobel to additional compensation, Strobel hereby assigns to Musket all rights, title, and interest in and to such copyrights in the United States and elsewhere, including all rights to registration and publication, rights to creative derivative works, and all other rights that are incident to copyright ownership.

Defendants have violated these provisions by manufacturing and selling Transload Trailers containing the Transload Fuel Transfer System to third parties.

13.     Further, the Agreement requires that Defendants "shall not directly or indirectly disclose confidential information to third parties without the prior written consent of Musket."  Confidential information includes "any data, information, 'know-how' that relates to Musket's proprietary technology concerning the development, design, fabrication, installation, operation, or maintenance of a diesel fuel transferring system and related portable fuel transfer trailers (the "Technology") and that has been developed in the course of the relationship between Musket and Strobel or that is developed jointly or individually by Musket and Strobel in connection with the performance of this Agreement."  The Agreement provides that the provisions relating to limited use of information, confidentiality, inventions, discoveries, improvements, copyrights or designs shall survive the expiration or termination of the Agreement (Paragraph 15.2, Agreement).

14.     Defendants have breached and continue to breach the Agreement by manufacturing and selling Transload Trailers to third parties and improperly utilizing and

disseminating confidential and other proprietary information owned by Musket to third parties.   In so doing, Defendants have also misappropriated Musket's trade secrets. Defendants' acts and omissions also constitute breach of the implied covenant of good faith and fair dealing that it has with Musket as a result of the relationship between the parties.   Defendants' acts and omissions also constitute unfair competition under Oklahoma common law and violation of the Oklahoma Deceptive Trade Practices Act. Finally, any sale of Transload Trailers outside the Agreement by Defendants also constitutes both direct and contributory patent infringement by Defendant with respect to Musket's U.S. patents.  Defendants' wrongful conduct continues and will continue unless they are permanently enjoined.

## COUNT I
## BREACH OF CONTRACT

15.     Musket realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

16.     Each and every action by each Defendant related to its manufacturing and selling of Transload Trailers to third parties without Musket's permission constitutes a breach of the Agreement.

17.     Each and every action by each Defendant related to its improper use of the confidential information, proprietary information, intellectual property and the Transload Fuel Transfer System owned by Musket constitutes a breach of the Agreement.

7173184_3.DOC

18.    By reason of Defendants' breaches of the Agreement, Musket has sustained and continues to sustain substantial injury, loss and damage to its business, and Defendants have been unjustly enriched.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

19.    Musket realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

20.    Inherent in the Agreement is the implied covenant for the parties to deal fairly and in good faith with each other.  This covenant prohibits each party from acting to injure the other party's reasonable expectations and impairing the rights or interests of the other to receive the benefits flowing from the Agreement.

21.    The contractual relationship between the parties as described above constitutes a "special relationship" giving rise to an action in tort for the breach of the implied covenant of good faith and fair dealing.  Defendants breached this covenant by manufacturing and selling Transload Trailers to third parties and utilizing information and property owned by Musket for Defendants' own benefit and to the detriment of Musket.

22.    The conduct described above also gives rise to an action in tort for the breach of the implied covenant of good faith and fair dealing because it was intentional, reckless, and in wanton disregard of Musket's rights.  As a result of Defendants' conduct in violation of the covenant of good faith and fair dealing inherent in the Agreement,

Musket has sustained and continues to sustain substantial injury, loss and damage to its business.

## COUNT III
## COMMON LAW UNFAIR COMPETITION

23.     Musket realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

24.     Defendants' manufacturing and sale to third parties of Transload Trailers covered under the Agreement as though the Transload Trailers, Transload Fuel Transfer System, and other intellectual property was property owned by Defendants was calculated to deceive ordinary prospective purchasers into purchasing products from Defendants.

25.     Defendants' wrongful actions constitute unfair competition under the common law of Oklahoma.

26.     As a result of Defendants' unlawful conduct, Musket has sustained and continues to sustain substantial injury, loss and damage to its business.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

27.     Musket realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

28.     As a result of Defendants' contractual relationship with Musket, Defendants had access to numerous trade secrets belonging to Musket relating to Transload Trailers and the Transload Fuel Transfer System.

7173184_3.DOC

29.     Defendants have misappropriated Musket's trade secrets and used those trade secrets to Musket's detriment in their manufacture and sale of Transload Trailers to third parties.

30.     Defendants' actions are in violation of Oklahoma's Uniform Trade Secrets Act, 78 Okla. Stat. § 85 et seq.

31.     As a result of Defendants' unlawful conduct, Musket has sustained and continues to sustain substantial injury, loss and damage to its business.

**COUNT V**
**PATENT INFRINGEMENT**

32.     Musket realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

33.     In manufacturing Transload Trailers for and selling Transload Trailers to third parties in the United States without Musket's authorization, Defendants have been and are currently directly infringing two of Musket's patents.  Specifically, by making, using, selling or offering Transload Trailers for sale to others without authority or license from Musket Defendants have directly infringed and are directly infringing U.S. Patent No. 6,945,288 (issued September 20, 2005) and U.S. Patent No. 7,156,134 (issued January 2, 2007).

34.     Furthermore, in manufacturing Transload Trailers for and selling Transload Trailers to third parties in the United States without Musket's authorization, Defendants have been and are currently contributorily infringing Musket's U.S. Patent No. 7,308,918 (issued December 18, 2007).  Specifically, Defendants have sold and are selling patented

7173184_3.DOC

machines (Transload Trailers) for use in the method claimed by U.S. Patent No. 7,308,918. Defendants know that the Transload Trailers will be used to carry out the method claimed by U.S. Patent No. 7,308,918. The Transload Trailers are not staple articles that may have substantial non-infringing uses, as those terms are defined under United States patent law.

35.     Musket has been and will continue to be injured by Defendants' direct and contributory infringement of its patents and such infringement will continue unless Defendants are enjoined from further infringement. As a direct result of its direct and contributory infringement of Musket's patents, Defendant has and will continue to unlawfully obtain profits Musket would have had but for the infringement.

## COUNT VI
## VIOLATIONS OF THE OKLAHOMA DECEPTIVE TRADE PRACTICES ACT

36.     Musket realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

37.     Defendants' manufacture and sale of Transload Trailers to third parties, constitutes unfair competition by misrepresenting ownership of a patented invention in a deliberate, willful, and malicious manner in violation of the Oklahoma Deceptive Trade Practices Act, 78 Okla. Stat. § 51 et seq.

38.     As a result of Defendants' unlawful conduct, Musket has sustained and continues to sustain substantial injury, loss and damage to its business.

7173184_3.DOC

## COUNT VII
## REQUEST FOR INJUNCTIVE RELIEF

39.    Musket realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

40.    In the Agreement, the parties recognize that the relationship created by this Agreement could give rise to the need by one or more of the parties for emergency judicial relief.  (Paragraph 14 Agreement).

41.    Musket has not sold or licensed the confidential information or any of its intellectual property relating to the Transload Trailers or its Transload Fuel Transfer System to any third parties.

42.    Musket has suffered irreparable harm as a result of Defendants' unlawful manufacture and sale of Transload Trailers to third parties, and Musket will continue to suffer irreparable harm should Defendants' unlawful conduct be allowed to continue. Musket's remedy at law is not by itself adequate and Musket has suffered and continues to suffer irreparable harm such that Musket is entitled to injunctive relief.

43.    Because Defendants agreed not to utilize the confidential information, proprietary information and intellectual property of Musket in the Agreement, and selling Transload Trailers based on the use of such information is a per se breach of the Agreement, Musket is likely to prevail on the merits of this action.

44.    Defendants are engaged in other businesses such that preventing them from selling Transload Trailers to third parties and otherwise utilizing Musket's intellectual

7173184_3.DOC

property, confidential information and proprietary information in violation of the Agreement will cause no harm to Defendants.

45.     The public interest is served by enforcing Musket's contractual rights as well as enforcing its intellectual property rights.

## PRAYER FOR RELIEF

**WHEREFORE,** Musket requests that the Court enter judgment in its favor as follows:

a.     That judgment be entered in favor of Musket against Defendants as to each of the above counts;

b.     That a preliminary and permanent injunction be entered against Defendants that requires Defendants, their affiliates, successors and assigns, and each of their agents, servants, employees and all persons with whom they are acting in concert to refrain from further infringement of Musket's patents, and to refrain from manufacturing, selling, offering for sale to third parties or utilizing any of the confidential information as defined in the Agreement, any Transload Trailers or other systems for transferring petroleum products between rail cars and tanker trucks, or any of Musket's patents;

c.     That Defendants be ordered to pay compensatory damages, restitutionary damages, consequential damages, lost profits, reasonable royalties and punitive damages in an amount to be shown at trial;

d.     That Defendants be ordered to pay Musket's costs including reasonable attorneys' fees; and

12

e.      That Musket have such other and further relief to which it shows itself to be entitled under law or equity.

## DEMAND FOR JURY TRIAL

Musket hereby demands a jury trial on all issues and causes of action that may be tried before a jury.

Respectfully submitted, this 5th day of August, 2011.

/s/ Clifford C. Dougherty
Clifford C. Dougherty, OBA # 11290
Henry D. Hoss, OBA #11354
Mark D. Folger, OBA #20700
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439
cliff.dougherty@mcafeetaft.com
henry.hoss@mcafeetaft.com
mark.folger@mcafeetaft.com

**ATTORNEYS FOR PLAINTIFF
MUSKET CORPORATION**

7173184_3.DOC