**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MUSKET CORPORATION, an Oklahoma corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>STROBEL CONSTRUCTION UNLIMITED, INC., a Nebraska corporation;<br>STROBEL MANUFACTURING, INC., a Nebraska corporation;<br>STROBEL STAROSTKA CONSTRUCTION, a Nebraska entity,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. CIV-11-880-M<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court is plaintiff's Motion for Preliminary Injunction, filed October 10, 2011. On November 14, 2011, defendants filed their response, and on November 29, 2011, plaintiff filed its reply. On January 24, 2012, the Court conducted a hearing on plaintiff's motion. On January 30, 2012, defendants filed a Supplemental Brief on Plaintiff's Motion for Preliminary Injunction, and on February 1, 2012, plaintiff filed its response to defendants' supplemental brief.

I. Background

Plaintiff Musket Corporation ("Musket") is a privately held affiliate of Love's Travel Stops & Country Stores, Inc., with offices in Oklahoma City, Houston, Phoenix, and Calgary, AB Canada. Musket is a commodity supply, trading and logistics company that transports petroleum products by various means, including truck, barge, pipeline, and rail. Musket's rail transportation business is commonly referred to by the company as its "Fuel by Rail" business. Specifically with regard to Fuel by Rail, Musket has conducted a substantial amount of business transporting petroleum

products such as diesel, gasoline, ethanol and crude oil, by rail throughout the United States and/or Canada since 2003.  Defendants, all of which are located in Clarks, Nebraska, are commonly-owned entities involved in the business of manufacturing industrial equipment for use in businesses such as Musket's Fuel by Rail business.

Certain obstacles necessarily confronted Musket's Fuel by Rail business at its inception.  In order to alleviate these obstacles and carve a niche into emerging markets, Musket developed a system (the "Musket Transload Fuel Transfer System") to support the safe and efficient movement of product to market via rail – a portable fuel transferring system and method whereby petroleum products can be safely and efficiently transferred between railcars and tanker trucks outside of a traditional rail terminal enabling their ultimate on time delivery to market.  In approximately 2002, Musket hired defendant Strobel Construction to assist Musket in developing the Musket Transload Fuel Transfer System and Musket Transload Trailers.

On or about March 9, 2004, Musket and defendant Strobel Construction memorialized their relationship concerning Musket Transload Trailers and entered into an agreement titled "Manufacturing and Intellectual Property Agreement" ("Agreement").  Pursuant to the Agreement, the parties agreed that defendant Strobel Construction would serve as the exclusive manufacturer of Musket Transload Trailers and that defendant Strobel Construction would manufacture the Musket Transload Trailers for the exclusive use and benefit of Musket.  The Agreement also requires defendant Strobel Construction to keep confidential all proprietary information relating to the Musket Transload Fuel Transfer System.  Additionally, Musket owns three patents and one patent application regarding the Transload Fuel Transfer System.

Defendants have manufactured and sold several transload trailers under the Strobel name to third parties. Musket asserts that defendants have breached the Agreement by selling these transload trailers. Musket further asserts that it would not be possible to manufacture these transload trailers without using the proprietary information and other intellectual property owned by Musket. Finally, Musket asserts that these transload trailers infringe Musket's patents.

Defendants contend that in early 2008, Musket placed an order for several transload trailers, and defendants began construction on the trailers. Upon completion of the first trailer, Musket declined delivery and subsequently denied payment of the trailer invoice. Defendants contend that such failure to pay for a completed transload trailer is a material breach by Musket of the Agreement. Additionally, defendants contend that the transload trailers that they are currently selling to third parties do not infringe Musket's patents.

Musket now moves the Court to enjoin defendants from manufacturing and selling transload trailers to third parties or using transload trailers in their own operations, from utilizing or disseminating Musket's confidential and proprietary information to third parties in violation of the Agreement, and from infringing Musket's patents covering the transload trailers until a final determination upon the merits is entered after a hearing on the merits in the arbitration of this case.

II.   Discussion

A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction

is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted). Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *See United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999). "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995).

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video*, 269 F.3d at 1156.

> Determining whether irreparable harm exists can be a difficult and close question. We have noted that [t]he concept of irreparable harm . . . does not readily lend itself to definition, nor is it an easy burden to fulfill. In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial.

*Id.* at 1262 (internal quotations and citations omitted).

Based upon the testimony and evidence presented at the hearing, the Court finds Musket has not met its burden of showing irreparable injury if the injunction is denied. Specifically, the Court finds that any harm Musket has suffered or may suffer as a result of defendants selling transload trailers to third parties can be adequately remedied through an award of monetary damages. At the hearing, Steve Strobel testified that defendants were only selling transload trailers to third parties and that defendants were not providing any information regarding the system or method relating to the trailers' use. Musket presented no testimony to the contrary. Additionally, at the hearing, there was no evidence presented that defendants were attempting to compete with Musket or were actively

marketing to Musket's potential customers. In fact, no evidence was introduced that the third parties defendants have sold transload trailers to are customers or direct competitors of Musket.

Additionally, the Court finds that Musket has not shown that any injury to its good will or name is certain or great. At the hearing, Brent Bergevin testified regarding the harm to Musket. While Mr. Bergevin stated generally that defendants' sales of the transload trailers would destroy Musket's good will and name, Mr. Bergevin provided no additional testimony as to how specifically this would happen. Mr. Bergevin's conclusory statement of harm is simply not enough to satisfy Musket's burden to show that its right to relief is clear and unequivocal.

The Court, therefore, finds that Musket's motion for a preliminary injunction should be denied.[1]

III.   Conclusion

For the reasons set forth above, the Court DENIES Musket's Motion for Preliminary Injunction [docket no. 14].

**IT IS SO ORDERED this 6th day of February, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Because all four requirements for a preliminary injunction must be satisfied, and because the Court finds Musket has failed to satisfy the irreparable injury requirement, the Court declines to address the remaining three requirements.